# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

DEBRA WILBURN,                                )
                                             )
                            Plaintiff,        )
            vs.                               )          1:05-cv-1917-DFH-JMS
                                             )
Y.M.C.A. OF GREATER INDIANAPOLIS              )
  (RANSBURG BRANCH),                          )
                                             )
                            Defendant.        )

## Entry Discussing Motion for Summary Judgment

As used in this Entry, "Wilburn" refers to the plaintiff, Debra Wilburn, and "YMCA" refers to the defendant, the Young Men's Christian Association of Greater Indianapolis. Wilburn alleges in her amended complaint that the YMCA discriminated against her on the basis of her religion. The YMCA seeks resolution of Wilburn's claims through the entry of summary judgment. The court finds, having considered the pleadings, the motion for summary judgment, Wilburn's response to such motion, and the YMCA's reply, that the motion for summary judgment must be **granted.** This conclusion is based on the following facts and circumstances:

1.     "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

   a.      A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

   b.      In evaluating whether a genuine issue of material fact exists, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.,* at 255; *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003).

c.      If the moving party successfully carries its burden, the non-moving party must "go beyond the pleadings" and present specific facts which show that a genuine issue of material fact exists. *Id.* at 324. This may be done through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). If the non-moving party fails to make a sufficient showing on an essential element of its case on which that party will bear the burden of proof at trial, the moving party is entitled to judgment as a matter of law. See *Celotex Corp.,* 477 U.S. at 322-23

d.      "Affidavits which are inadequate under Rule 56(e) must be disregarded." *G.D. Searle & Co. v. Chas. Pfizer & Co., Inc.,* 231 F.2d 316, 318 (7th Cir. 1956); see also *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993)(if documents submitted in support of a motion for summary judgment do not satisfy the requirements of Rule 56(e), they must be disregarded). "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) (citing cases).

2.      Title VII of the Civil Rights Act of 1964, as amended, prohibits "employers" from discriminating against individuals on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). This is the statute invoked by Wilburn in the present case. She alleges that the YMCA discriminated against her in a variety of ways. Her pertinent Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), however, was No. 470-2006-02029.

a.      A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations. *Haugerud v. Amery School Dist.,* 259 F.3d 678, 689 (7th Cir. 2001) (citing *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 481 (7th Cir. 1996)). "'The claims are not alike or reasonably related unless there is a factual relationship between them.  This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.'" *Haugerud,* 259 F.3d at 689 (quoting *Cheek v. W. & S. Life Ins.,* 31 F.3d 497, 501 (7th Cir. 1994)).

b.      "It is well-established that a plaintiff in a Title VII case may proceed under a direct or indirect method of proof." *Butts v. Aurora Health Care,* 387 F.3d 921, 924 (7th Cir. 2004) (citing *Mateu-Anderegg v. School Dist.,* 304 F.3d 618, 623 (7th Cir. 2002)); see also *Stone v. City of Indianapolis Public Util. Div.,* 281 F.3d 640, 644 (7th Cir. 2002).

c.      Direct evidence is evidence that, if believed by the trier-of-fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). The direct evidence must

2

show that the defendant said or did something indicating discriminatory animus with regard to the specific employment decision in question. *Id.* In short, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers,* 320 F.3d at 753 (citation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004)(quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

       d.     Under the alternative method, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. First, the plaintiff must establish a *prima facie* case of discrimination. Second, once the *prima facie* case is established, the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. Finally, if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802-04; *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

       3.     When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed.R.Civ.P. 56(c); *Anderson,* 477 U.S. at 255; *Baron v. City of Highland Park,* 195 F.3d 333, 338 (7th Cir. 1999). "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The facts set forth in this Entry therefore do not necessarily reflect reality, but instead reflect the evidence properly before the court in light of the summary judgment standard.

       4.     The material facts, construed in the manner most favorable to Wilburn as the non-movant, are the following:

       a.     The YMCA is a not-for-profit organization which operates in the greater Indianapolis area. At various branches and other sites, it operates services and programs, including children's day camps in the summer ("Day Camps") and Before and After School programs ("BAS") for children during the school year.

       b.     The YMCA conducts various training sessions throughout the year for its employees. One or two of these sessions are held on Saturdays.

c.      Wilburn was employed by the YMCA in various capacities beginning in October of 2000. Her first position was as a Co-Site Director. Her most recent position was as a Camp Counselor at the Ransburg Branch Day Camp during the Summer of 2005. In each of those positions, Wilburn's responsibilities included the supervision and safety of the children enrolled in the programs. All of the positions held by Wilburn during her employment with the YMCA were seasonal. This meant that she had to be rehired by the YMCA for each new season. Daphne Williamson ("Williamson"), the Senior Program Director of the Ransburg Branch, rehired Wilburn multiple times, including in the years of 2001, 2002, 2003, 2004, and 2005.

d.      Wilburn resigned her position with the YMCA during the Summer 2005 Day Camp and was not rehired for the 2005-2006 Fall school year.

e.      Wilburn is a Seventh Day Adventist. She made the YMCA aware of this fact during her initial interview with Williamson in or around October 2000. Wilburn did not discuss anything further about her religion at the time of the interview. Specifically, Wilburn did not tell Williamson that she could not work on Saturdays.

f.      In approximately 2001, Williamson informed all employees at School 107 that the YMCA was having a Super Saturday training session. Super Saturday trainings were held once or twice a year. Wilburn told Lou Drexler ("Drexler"), Vice President of Human Resources, that she could not attend the Super Saturday training session because of her religion. Drexler conveyed this information to Williamson. Williamson told Wilburn that she did not have to attend Super Saturday training sessions and she provided Wilburn with the training materials. Williamson did not threaten to take or take any adverse action against Wilburn for not attending Super Saturday training sessions. Williamson did not tell Wilburn that not attending Super Saturday training sessions would prevent her from receiving a pay increase.

g.      Thereafter, Williamson never discussed Wilburn's religious practices with her or anyone at the YMCA until this lawsuit was filed.  No meeting occurred between Williamson, Wilburn, and Fred Dorsey concerning Super Saturday trainings or Wilburn's religion.

h.      During the 2004-05 school year, Wilburn was employed in the YMCA's BAS program at School 96 as a Co-Site Director and at School 107 as a Site Director. On February 16, 2005, Wilburn received a performance evaluation from Becky Ricks ("Ricks"), Site Director, concerning her work performance at School 96.  Wilburn's work performance was rated as "satisfactory" in most respects, but she received "unsatisfactory" ratings in keeping her supervisors informed of pertinent information and with respect to her attendance.

i.      Wilburn was also rated unsatisfactory in assuming the required leadership and responsibility for the daily program.  It was noted that the YMCA was "unable to find her at times" and that she would leave her assigned work area without permission "for short periods of time." Wilburn was counseled to be at work on time and to call in ahead of time when she could not be at work. Ricks did not tell Wilburn

4

that she would not receive a raise if she did not attend Super Saturday training sessions nor did she take or threaten to take any adverse action against Wilburn for not attending Super Saturday training sessions. Ricks prepared an action plan to improve Wilburn's performance.

j.      Ricks met with Wilburn to review her evaluation and action plan regarding her work at School 96. Ricks could not complete the review meeting because Wilburn started yelling and screaming at Ricks.

k.      While at School 107, Wilburn was evaluated by Williamson. Williamson rated Wilburn as "unsatisfactory" in 22 of the 33 categories rated. Williamson also prepared an action plan to improve Wilburn's performance. She reviewed the evaluation and action plan with Wilburn on March 22, 2005.

l.      Williamson decided to give Wilburn another chance and rehired her for the Summer 2005 Day Camp. On June 5, 2005, Wilburn received a disciplinary notice for Failure to Maintain Payroll Time Card and Job Incompetence/Negligence when she submitted an incorrect time sheet.

m.      On July 5, 2005, Wilburn received another disciplinary notice for Failure to Maintain Time Sheet and being tardy and inappropriately dressed. Wilburn arrived ten minutes late but falsely recorded her time as though she had arrived on time. Wilburn was warned that a further offense would result in her termination from the Day Camp.

n.      During the summer of 2005, Williamson decided not to rehire Wilburn for the next season. Williamson's supervisor, Jeff Newnam ("Newnam"), executive Director of the Ransburg Branch, agreed with Williamson's decision. Newnam was not aware of Wilburn's religious beliefs or practices. On or about July 28, 2005, Wilburn talked to Williamson about whether she would be rehired in the Fall for the 2005-06 BAS program. Williamson told Wilburn that based on her poor performance she would not be rehired.

o.      Ten days before the Day Camp ended for the summer, on August 2, 2005, Wilburn submitted a written statement that "I Debra Wilburn is stating on Aug. 2, 2005 will be my last day working for the 2005 Y.M.C.A. summer camp program. Reason for Leaving/Personal." Wilburn said she was leaving because she had to take her daughter to college. The YMCA understood this document to indicate Wilburn's resignation from her employment.

p.      On August 17, 2005, Wilburn met with Newnam to discuss why she was not being rehired. Wilburn told Newnam that she did not agree with Williamson's decision not to rehire her. Wilburn continues to disagree with the YMCA's assessment of her job performance. Newnam explained to Wilburn that her job performance had not met the YMCA's expectations.  Wilburn did not mention her religion during the 30 minute conversation nor did she express any belief that Williamson's decision was based on Wilburn's religion.

5.     Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U .S.C. § 2000e-2. A Title VII plaintiff must "file a timely charge with the EEOC encompassing the acts complained of as a prerequisite to filing suit in federal court." *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir. 1985); 42 U.S.C. § 2000e-5(b) & (f). A Title VII plaintiff may not bring claims in a lawsuit that exceed the scope of the plaintiff's EEOC charge. *E.g., Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996). Hence, a plaintiff attempting to bring a claim of discrimination cannot bring such a claim if it was not included in his EEOC charge. *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). Put another way, an aggrieved employee "may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992). The purpose of this requirement is two-fold: it gives the EEOC and the employer an opportunity to settle the dispute, and it puts the employer on notice of any charges against it. *Id.*

a.     Wilburn filed her charge of discrimination with the EEOC on April 6, 2006. Because of this, and because Indiana is a deferral state, Wilburn is limited in this action to proceed based on acts which occurred after July 10, 2005, this being 300 days before her filing with the EEOC. The YMCA is entitled to summary judgment as to any claim based on acts occurring on or before July 10, 2005.

b.     Wilburn's claims in this action are also limited by the actual content of the charge of discrimination filed with the EEOC. A Title VII plaintiff may not bring claims in a lawsuit that exceed the scope of the plaintiff's EEOC charge. See 42 U.S.C. § 2000e-5(b) & (f); *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996). If the claims in the lawsuit are "like or reasonably related" to the allegations in the EEOC charge and could reasonably be expected to grow out of the EEOC's investigation of the original charge, the claim may be considered within the scope of the charge. *Ezell v. Potter,* 400 F.3d 1041, 1046 (7th Cir. 2005); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir. 1985). This standard is a liberal one, designed to accomplish the remedial purpose of Title VII, which often depends on charges filed by employees without attorneys for its enforcement. *Babrocky,* 773 F.2d at 864.

6.     The one timely claim which is presented in the charge of discrimination, and hence which is preserved for adjudication here, is Wilburn's claim that she was not rehired for the 2005-2006 Fall school year and that this decision was based on her religion.

7.     A plaintiff may prove discrimination by the direct or indirect method. *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806 (7th Cir. 1999). Wilburn does not offer direct evidence of religious discrimination and seeks to prove her claim using the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, an employee must first establish her *prima facie* case. *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998). If the employee carries her burden of demonstrating a *prima facie* case, there is a presumption of

discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. *Id.* If the employer provides such a reason, the burden then shifts back to the employee to prove that the employer's stated reason is a mere pretext, or a lie, from which a jury might infer that the real reason was unlawful discrimination. *Vakharia,* 190 F.3d at 806-07; *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 983 (7th Cir. 1999).

> To establish a *prima facie* case of religious discrimination by failure to accommodate, a plaintiff must show that: (1) she follows a bona fide religious practice that conflicts with an employment requirement; (2) she brought the practice to the employer's attention; and (3) the religious practice was the basis for an adverse employment action. *EEOC v. United Parcel Service,* 94 F.3d 313, 317-18 (7th Cir. 1996), citing *Wright v. Runyon,* 2 F.3d 214, 216 n.4 & 217 (7th Cir. 1993). The employer may respond to the *prima facie* case by proving either that it offered a reasonable accommodation which the employee did not accept, or that it was unable to provide a reasonable accommodation without undue hardship. See *id.* The employer bears the burden of proof on these issues. *EEOC v. Ilona of Hungary,* 108 F.3d at 1576. A plaintiff is not required to propose a specific accommodation. *Redmond v. GAF Corp.,* 574 F.2d 897, 901 (1978).

*Equal Employment Opportunity Commission v. Oak-Rite Manufacturing Corporation,* 2001 WL 1168156, at *9  (S.D.Ind. August 27, 2001).

8.     The YMCA's motion for summary judgment focuses on the third element of a *prima facie* case, *i.e.,* whether Wilburn's religious practice was the basis for an adverse employment action. The undisputed facts established by the evidentiary record in this case show that 1) Wilburn was rehired for several years (2001-2005) after the YMCA learned of her religion, 2) Mr. Newnam was not aware of Wilburn's religion during her employment, 3) the YMCA accommodated Wilburn's request to not attend Super Saturday training sessions, and 4) Wilburn voluntarily resigned her employment for personal reasons before the end of the 2005 Day Camp. Thus, there was neither an adverse employment action (the failure to rehire Wilburn) nor was there a causal connection between Wilburn's religious practices and the end of her employment and the decision to not rehire her for the 2005-2006 Fall school year.

9.     The third element of a *prima facie* case is therefore absent. "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993)(citing *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990)).

10.     Even if Wilburn had come forward with a *prima facie* case of discrimination, the record shows that the YMCA had a legitimate reason for not rehiring her for the 2005-2006 Fall school year. That reason consisted in the substandard performance of her job duties. Poor performance is unquestionably a legitimate reason for termination. *See, e.g., Abioye v. Sundstrand Corp.,* 164 F.3d 364, 368 (7th Cir. 1998), *cert. denied,* 119 S. Ct. 2337 (1999). Wilburn's substandard performance consisted of chronic tardiness, a

tendency to incorrectly record hours of work, not tending to job duties, and being out of her assigned work area during working hours. Wilburn has not shown that this reason was a pretext. Pretext means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995); *see also Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000) (to show pretext, plaintiff must present evidence that each of the proffered reasons is either a lie or completely lacking a factual basis). Whether there was unfairness in the severity of the measure taken, or whether a different decision could reasonably have been made prior to the termination of her employment are not material to the question of pretext or to any other question which must be addressed in this lawsuit. At this final stage of the *McDonnell Douglas* burden-shifting analysis, therefore, Wilburn points to nothing which reasonably suggests that the reasons offered by the YMCA for not rehiring her for the 2005-2006 Fall school year were lies to cover up discrimination based on her religion.

11.     "'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)).

12.     As explained herein, Wilburn has not come forward with evidence that establishes a *prima facie* case as to her claim. Even if she had, she has not shown that the YMCA's proffered reason for its action was pretextual. Accordingly, the YMCA's motion for summary judgment must be **granted.** Judgment consistent with this Entry shall now issue.

So ordered.

David F Hamilton

DAVID F. HAMILTON, Judge
United States District Court

Date:   9/18/2007